695 So.2d 619 (1995)
STATE of Alabama ex rel. A.T.
v.
E.W.
2940404.
Court of Civil Appeals of Alabama.
November 17, 1995.
Rehearing Denied January 5, 1996.
*620 William Prendergast and Lois Brasfield, Asst. Attys. Gen., Department of Human Resources, for Appellant.
Emmett O'Neal Griswold, Jr., Samson, for Appellee.
MONROE, Judge.
This case involves the reopening of a paternity adjudication under § 26-17A-1 of the Alabama Uniform Parentage Act, Ala.Code 1975.
The minor child, J.J.S., was born on August 16, 1981. In February 1983, the mother, A.T., filed a complaint alleging that E.W. was the biological father. On April 14, 1983, the District Court of Geneva County issued an order for a blood test, noting that E.W. denied paternity and had requested the test. The order required E.W. to pay for the testing by July 14, 1983.
On July 13, 1983, E.W. signed an affidavit acknowledging paternity. The Court issued its paternity order that same day, directing the Defendant to pay $75 per month child support. Court costs were waived and no blood tests were administered.
E.W. did not appeal, and little or no child support was paid over the next five and one-half years, until an order of income withholding was entered in January 1989. At that time, E.W. filed a motion for a new trial, alleging newly discovered evidence. He said that A.T. had claimed someone else was the father. This motion was summarily denied by the Court on March 1, 1989. No appeal was taken.
On April 6, 1994, A.T. filed a petition to modify support. E.W. counterclaimed, arguing that he was not the father; he requested blood tests and the reopening of the prior order pursuant to § 26-17A-1, Ala.Code 1975.
The trial court continued the case and ordered the blood tests requested by E.W. The test results showed that E.W. is not the biological father of the child. E.W. then moved the trial court to set aside the previously entered paternity order and to reopen the case. The trial court conducted a hearing on the motion to reopen the case, and *621 granted the order. The trial court found that E.W. is not the father of the child and ordered his parental rights and obligations terminated. The state appeals on behalf of A.T.
The state argues several assignments of error. It argues that § 26-17A-1, part of the Alabama Uniform Parentage Act, Ala. Code 1975, is unconstitutional because it violates the public policy of Alabama regarding finality of judgments and legitimacy of children. The state further argues that the statute denies the equal protection guaranteed by the Alabama and United States Constitutions; and that it violates Article IV, § 95, Ala. Const.1901, which precludes the impairment of contracts.
All of these issues have recently been considered by this court in K.M. v. G.H., 678 So.2d 1084 (Ala.Civ.App.1995), in which this court held that § 26-17A-1 is valid against these constitutional attacks.
The state also argues that the statute is unconstitutionally vague, and therefore void. The statute reads in pertinent part:
"§ 26-17A-1. Reopening of paternity case.
"(a) Upon petition of the defendant in a paternity proceeding where the defendant has been declared the legal father, the case shall be reopened if there is scientific evidence presented by the defendant that he is not the father. The court shall admit into evidence any scientific test recognized by the court that has been conducted in accordance with established scientific principles or the court may order a blood test, or a Deoxyribose Nucleic Acid test of the mother, father, and child. Whenever the court orders a test and any of the persons to be tested refuse to submit to the test, the fact shall be disclosed at the trial, unless good cause is shown."
A statute will be declared unconstitutionally vague and ambiguous only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute's language. Friday v. Ethanol Corp., 539 So.2d 208, 213 (Ala.1988). Additionally, "uncertainty in this statute is not enough for it to be unconstitutionally vague; it must be substantially incomprehensible." Id. (citation omitted).
The state argues that because there is some dispute as to whether a person previously adjudicated to be the father is required to present scientific evidence when he petitions the court to reopen his paternity case or whether the court may order tests to produce that scientific evidence, the statute is unconstitutionally vague. However, this does not rise to the level of "substantially incomprehensible." As the Court pointed out in Friday, the possible statutory constructions offered by the parties can be taken to illustrate that the statute is "at least amenable to some sensible construction." Id. at 213. We hold that the statute is not unconstitutionally vague.
The state next contends that the trial court improperly reopened the paternity case without the initial presentation of scientific evidence by E.W. However, this is an unusual case in that E.W. did not, of his own accord, seek relief by reopening the case; rather, he was named the defendant in the mother's petition to modify child support. He asserted nonpaternity as a defense. The court was entitled to order blood tests and reconsider the issue of paternity after the tests were conducted, pursuant to Rule 60(b), Ala.R.Civ.P. See Ex parte State ex rel. McKinney, 567 So.2d 366 (Ala.Civ.App.1990); writ denied, 575 So.2d 1024 (Ala.1990). Although the trial court apparently ordered the blood tests in reliance on § 26-17A-1, its order was justified under Rule 60(b). Therefore, even if the trial court misconstrued the statute, it was harmless error, because the same relief was otherwise available. The label placed on the motion is not controlling, because Williams sought relief that could be properly granted under 60(b). See, e.g., Rebel Oil Co. v. Pike, 473 So.2d 529, 531 (Ala.Civ. App.1985). Based on the facts of this case, we do not find that the trial court committed reversible error when it reopened the paternity issue.
We recognize that relief under Rule 60(b) is an extreme remedy to be granted in extraordinary circumstances. State ex rel. McKinney, 567 So.2d at 370. However, the *622 grant or denial of such a motion is within the sound discretion of the trial court, and our review is limited to determining whether there was an abuse of that discretion. C.W. v. State Department of Human Resources, 590 So.2d 306 (Ala.Civ.App.1991).
In State ex rel. McKinney, supra, the trial court ordered blood tests to be performed, and then granted a Rule 60(b) motion filed by the man previously adjudicated to be the father, and set aside the previous judgment declaring him to be the father. As in the case now before us, the man in McKinney had erroneously admitted by affidavit that he was the father, and he had been adjudged to be the father, without trial or presentation of evidence proving paternity. The court noted that "a decree ... entered solely upon the stipulation of the parties is without [the] necessary proof.... [T]he absence of such proof gives emphasis to the possible injustice and terrible wrong committed ... if the decree is not set aside." State ex rel. McKinney, 567 So.2d at 368 (citation omitted).
The trial court in the present case noted in its order that E.W. was indigent when he signed the admission and waived his right to a blood test, that he did so because he could not afford to pay for a blood test and was not informed that he was entitled to have tests conducted despite his inability to pay for the tests, and that he was not represented by counsel. We also note that E.W. recently became aware that he might not be the father and that E.W. did not initiate the proceedings, but that he was brought before the court in an action to increase his child support obligation. We believe equity justifies allowing him to assert nonpaternity as a defense. We hold that the trial court did not abuse its discretion in finding extraordinary circumstances justifying its Rule 60(b) relief of ordering the blood tests.
The state further argues that Rule 60(b) relief was improper because, it argues, the motion for relief, filed 11 years after the adjudication of paternity, was not filed within a reasonable time. Under Rule 60(b)(6), relief may be granted for "any other reason justifying relief from the operation of the judgment," and relief must be sought within a reasonable time from the date of the judgment. In McKinney, the court found that the motion for Rule 60(b)(6) relief, filed 12 years after the initial paternity judgment, was filed within a reasonable time. 567 So.2d at 369. Likewise, we find no abuse of discretion in the trial court's holding that the motion for relief under Rule 60(b)(6) was timely made.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., concurs.
YATES, J., concurs in the result.
THIGPEN and CRAWLEY, JJ., dissent.
THIGPEN, Judge, dissenting.
Some of my concerns regarding the ultimate outcome of this case may be beyond proper consideration on appeal because of its procedural posture.
I do not believe that a distinction exists which would allow this father to assert non-paternity as a defense some eleven years after a valid paternity adjudication when a motion pursuant to Rule 60(b)(6), A.R.Civ.P. could not have been properly entertained. The record is clear that this father deliberately chose to acknowledge paternity in 1983, in spite of his question at that time whether he was in fact this child's biological father. In 1994, the father admitted that rather than paying approximately $300 for blood tests in 1983, he chose to accept the legal and financial responsibility for the duration of the child's minority by acknowledging paternity. While choosing to accept the legal and financial responsibility for another human being for approximately twenty years seems to me to be an illogical choice, rather than paying for blood tests to determine the truth, nevertheless, that was a deliberate choice by this father over a decade ago. It has always been the law that such choices are binding. Ex parte W.J., 622 So.2d 358 (Ala.1993); Ex parte State ex rel. Edwards, 603 So.2d 366 (Ala.1992); Ex parte State ex rel. Milton, 598 So.2d 914 (Ala.1992); Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); see also Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995); Ex parte State ex rel. V.E.T.P., *623 646 So.2d 551 (Ala.1993); Ex parte State ex rel. G.M.F., 623 So.2d 722 (Ala.1993); and Edwards v. Smith, 651 So.2d 34 (Ala.Civ. App.1994). I do not believe that Ala.Code 1975, § 26-17A-1, was designed to relieve a man from a deliberate and calculated choice he made years earlier, simply because he is now unwilling to pay further support. That interpretation effectively overturns well-settled legal precedent. See for example, Ex parte W.J., 622 So.2d 358 (Ala.1993); Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); Ledbetter v. Ledbetter, 628 So.2d 655 (Ala.Civ.App.1993); and Powers v. State, 622 So.2d 400 (Ala.Civ.App.1993).
In this case, as in numerous others, the putative father deliberately chose to acknowledge paternity and to support a child that "might" be his biological child rather than seek the truth when the opportunity was provided. Several years later, when the child's needs increased, the father did not want to continue his legal responsibility, and he sought to be relieved of his earlier choice. While the majority correctly notes that the father raised non-paternity as a defense to the modification petition, the record also reveals that, simultaneously, he filed a counterclaim seeking to have the eleven-year-old paternity adjudication re-opened to allow him the opportunity to present evidence to be relieved of that judgment. Although the trial court granted his relief, the law does not allow this. Ex parte State ex rel. J.Z., 668 So.2d 566 (Ala.1995); see also Ex parte State ex rel. Harrell, 588 So.2d 868 (Ala.1991); Ex parte State Department of Human Resources, 621 So.2d 1345 (Ala.Civ.App.1993); and Ex parte State ex rel. G.S., 591 So.2d 890 (Ala.Civ.App.1991).
Once the father obtained the results of blood tests, he then amended his answer and counterclaim and filed a petition seeking to be relieved of the 1983 paternity adjudication. In other words, it appears to me that the trial court's error in reopening the case for blood testing provided the father with the scientific evidence he needed to legally petition to reopen the paternity adjudication, pursuant to Ala.Code 1975, § 26-17A-1.
The procedural posture of this case has allowed an adjudicated father to obtain the proof he voluntarily chose to abandon over a decade ago in order to now be relieved of his deliberate choice to assume the legal and financial responsibility for this child. In the intervening years between the initial paternity adjudication and the setting aside of that order, the father's financial responsibility for this child has been an issue before the trial court on other occasions, and it appears that there have been collections via the income withholding order and a tax offset. The child's testimony also indicates her reliance on the prior paternity adjudication that E.W. is her father.
It appears to me that the recent trend regarding the reconsideration of prior paternity adjudications has been to focus on the adjudicated father rather than the psychological, emotional, and financial damages to the child. Previously, in cases involving the welfare of a child, the polestar utilized by the trial and appellate courts of Alabama had always been the best interest of the child. That principle has been applied equally in protecting the illegitimate offspring from illicit sexual unions. See Jones v. Williams, 592 So.2d 605 (Ala.Civ.App.1991); and Department of Pensions & Security v. Hornbuckle, 336 So.2d 1372 (Ala.Civ.App.1976). Cases such as the case sub judice seem to violate that long-standing principle by allowing an adult to revoke an earlier choice when that revocation is clearly contrary to a child's best interest and evidence may have been lost or destroyed in the interim.
While I concurred only in the result of the holding that Ala.Code 1975, § 26-17A-1, was not unconstitutional for the reasons raised on appeal in K.M. v. G.H., 678 So.2d 1084 (Ala. Civ.App.1995), I did so fearing that such a decision might serve to open the floodgates for cases such as the instant appeal. K.M., supra, did not interpret that statute to establish the right of at-will revocation of one's deliberate choice to assume the legal and financial responsibilities of a child's legal father. That case merely considered specific constitutional challenges to the statute and did not address whether one who deliberately chooses to accept the responsibilities of a legal father may later utilize the statute to rescind his choice, thus excusing himself *624 from the responsibilities of his earlier choice, regardless of any consequences to the child.
I agree with the majority's rationale that when one has scientific proof that excludes any possibility that he is a child's biological father, it seems unfair to require him to assume the legal and financial responsibility for that child throughout the child's minority. It appears to me, however, that when one, as here, has voluntarily chosen to accept legal and financial responsibility for a child in the face of his own doubts of that child's paternity, he has chosen to accept the responsibilities of that child's legal father regardless of biological concerns. The choice to assume the legal and financial responsibilities of a child is not a matter to be taken lightly, nor is it something to be cast aside when one grows tired of the responsibilities of his deliberate choice. Ex parte Lipscomb, 660 So.2d 986 (Ala.1994); see Kernop v. Taylor, 628 So.2d 707 (Ala.Civ.App.1993), on remand, 644 So.2d 971 (Ala.Civ.App.1994); see also Pruitt v. Pruitt, 669 So.2d 931 (Ala.Civ. App.1995); and Percer v. Percer, 370 So.2d 308 (Ala.Civ.App.1979). An adjudicated father is more than a mere unobligated volunteer, such as a step-parent, who may legally abandon the responsibility of a spouse's minor children that the stepparent has not adopted. See Newman v. Newman, 667 So.2d 1362 (Ala.Civ.App.1994), writ quashed [August 25, 1995]; Deal v. Deal, 545 So.2d 780 (Ala.Civ.App.1989).
To allow that statute to be utilized to entitle one to this result casts uncertainty on the validity and finality of thousands of paternity judgments now in existence, notwithstanding the uncertainty it casts upon the children involved. It appears to me that the time has come for the recognition and identification of the distinctions between a legal father and a biological father and the rights and responsibilities that flow from those relationships.
CRAWLEY, Judge, dissenting.
I believe that Ala.Code 1975, § 26-17A-1 is unconstitutional. See K.M. v. G.H., 678 So.2d 1084, 1089 (Ala.Civ.App.1995) (Crawley, J., dissenting). I also believe that E.W. would not have been entitled to relief under Rule 60(b)had he filed a Rule 60(b) motionbecause he was not diligent about protecting his rights. Although Judge Monroe states that E.W. "recently became aware that he might not be the father," the record shows that as early as 1989, E.W. had reason to believe that he was not the father of the child.
I strongly disagree with the following statement in Judge Monroe's opinion: "[E]quity justifies allowing [E.W.] to assert nonpaternity as a defense." The time to have asserted nonpaternity as a defense was 12 years earlier when the first action was begun. E.W. did not challenge the outcome of that action, so the issue of paternity is res judicata. The principles of equity, like the principles underlying Rule 60(b), will not help a party who is not diligent about asserting his own rights.
"The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply `no principle of law or equity which sanctions the rejection ... of the salutary principle of res judicata.'"
Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 400, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).